IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| R&L ZOOK, INC., d/b/a, t/a, aka UNITED CHECK CASHING COMPANY, | : | CIVIL ACTION |
| Plaintiff, | : | NO. 07-03774 |
| v. | : | |
| PACIFIC INDEMNITY COMPANY, | : | |
| Defendant. | : | |

**MEMORANDUM**

Giles, J.                                                                                                          May 1, 2008

**I.  INTRODUCTION**

Before the court are Defendant Pacific Indemnity Company's and Plaintiff R&L Zook Inc., d/b/a, t/a, aka United Check Cashing Company's ("United") Cross-Motions for Summary Judgment.  The ultimate issues raised by the motions and determined by the court are whether Defendant is required to defend Plaintiff in *Til-Mar Design Inc. v. R&L Zook Inc., d/b/a United Check Cashing and Ronald Fante,* CP No. 0406-551 ("Underlying Lawsuit"), reimburse Plaintiff for attorney fees and costs paid to defend the Underlying Lawsuit, and indemnify Plaintiff at the conclusion of the Underlying Lawsuit.  Because the Underlying Lawsuit involves allegations that Plaintiff negligently and/or in bad faith cashed checks from an unauthorized individual, the court must initially determine whether checks constitute "tangible property" under Plaintiff's insurance policy ("Policy"), which provides coverage of physical injury to tangible property.

The court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.  It concludes that, under law, checks are not "tangible property "

1

under the Policy language and, therefore, that Defendant is not required to defend Plaintiff in the Underlying Lawsuit.  Because the court finds that checks are not "tangible property" under the Policy, it will not reach Defendant's alternative arguments that coverage of the Underlying Lawsuit would violate public policy, or that an order of indemnification is premature.

## II.  GENERAL BACKGROUND

Plaintiff is a check cashing business located in Philadelphia, Pennsylvania.  (Am. Compl. ¶ 1.)  Defendant is in the insurance business and is a Wisconsin Corporation with its principal place of business in New Jersey.  (Answer to Am. Compl. ¶ 2 [hereinafter "Answer"].)  Defendant issued an insurance policy numbered 3579-82-39 WBO ("Policy") to Plaintiff on May 15, 2003, that was in effect between May 3, 2003, and May 3, 2004.  (*Id.* at 0001.)

In June 2004, Plaintiff was served a First Amended Complaint in the Underlying Lawsuit, wherein Plaintiff was a named a defendant.  (Am. Compl. ¶ 4.)  The Underlying Lawsuit is currently pending in the Court of Common Pleas of Philadelphia County.  (*Id.*)  In the Underlying Lawsuit, Til-Mar alleges that Plaintiff failed to exercise ordinary care and acted in bad faith when it accepted checks from Ronald Fante, which were made payable to Til-Mar.  (*Id.* ¶ 9.)  In the First Amended Complaint, the counts against Plaintiff are conspiracy, concerted action, and conversion, and Til-Mar seeks both compensatory and punitive damages.  (*See* J.A. at 0086, 0087, 0088.)  However, Til-Mar, through a letter sent by counsel on September 17, 2007, agreed to limit the claim against Plaintiff to one for compensatory damages on a theory of negligence.  (*Id.* at 0103.)

Plaintiff originally filed the current action for a declaratory judgment pursuant to 42

Pa.C.S.A. §§ 7531, *et seq.* in the Philadelphia Court of Common Pleas. (Ans. ¶ 3.) On September 11, 2007, this suit was removed from the Philadelphia Court of Common Pleas to the Eastern District of Pennsylvania. (*Id.*) After removal, the matter was converted into an action for declaratory judgment pursuant to Title 28 U.S.C. § 2201(a). (*Id.*) On December 28, 2007, Plaintiff filed an amended complaint to correct the name of Defendant. (*See* Am. Compl.)

Here, Plaintiff contends that, at the time of service of the First Amended Complaint, the Policy provided coverage of the Underlying Lawsuit. (Am. Compl. ¶ 6.) Accordingly, Plaintiff argues that, pursuant to the Policy, Defendant is required to defend the Underlying Lawsuit and that Defendant has wrongfully refused to do so. (*Id.*) Plaintiff asks that the court enter declaratory judgment that Defendant be required to defend the Underlying Lawsuit, pay any judgment that may be awarded, and reimburse attorney fees expended in defending the pending action. (Am. Compl. ¶ 10.) Plaintiff claims that, as a result of Defendant's refusal to defend the Underlying Lawsuit, it has expended in excess of $25,000.00 in legal fees and will expend additional fees in the future. (Am. Compl. ¶¶ 7-9.) Defendant counters that it is not obligated under the terms of the policy to defend. (Answer ¶ 7.)

### III.  STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a summary judgment as a matter of law." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if the evidence is such that a reasonable jury

could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is material if it might affect the outcome of the case under governing law. *Id.* Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Id.*

In reviewing a motion for summary judgment, the court "does not make credibility determinations and must view facts and inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995). On cross-motions for summary judgment, the standard of review does not change. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). Each moving party must independently show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Id.*; *see* Fed. R. Civ. P. 56.

## IV.  DISCUSSION

The parties do not dispute that Pennsylvania law applies here. Under Pennsylvania law, an insurer's obligation to provide a legal defense to its insured hinges upon whether the claims asserted in the complaint potentially come within the policy's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). The insured has the burden of showing that the claims are within the coverage provided by the policy. *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966); *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 309 (Pa. Super. 1999). In interpreting an insurance policy, the court's first level of inquiry must be the language of the insurance policy. *Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999). A court's goal is "to ascertain the intent of the parties as manifested by the language of

the written instrument." *Id.*

The Policy language at issue here is the meaning of "tangible property." The relevant provisions of the Policy provide:

> Subject to all of the terms and conditions of this insurance, we will pay damages that the insured becomes legally obligated to pay by reason of liability: imposed by law; or assumed in an **insured contract**; for **bodily injury** or **property damage** caused by an occurrence to which this coverage applies.

(J.A. 0016.)

> **Property Damage** means: physical injury to *tangible property*, including resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or loss of use of *tangible property* that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it. *Tangible property* does not include any software, damage or other information that is in electronic form.

(J.A. 0044. (emphasis added).)

> **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

(J.A. 0044.)

Under the terms and conditions of the policy, Defendant could have a duty to defend Plaintiff against a suit, even if the suit is false, fraudulent or groundless. (J.A. 0016.) However, clearly Defendant has no duty to defend against any suit to which the insurance does not apply. Accordingly, Defendant argues that the insurance policy does not apply to the Underlying Lawsuit because no property damage occurred, because checks are not tangible property. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J. 7-8.) Plaintiff counters that the term "tangible property" is ambiguous and a jury trial is implicated. (Mem. in Supp. of Pl.'s Mot. Summ. J. 6-

5

7.)

A policy provision is not ambiguous simply because the parties do not agree upon the construction of the provision. *Allstate Ins. Co. v. Grigaitis*, 1998 U.S. Dist. LEXIS 3236, No. 96-4790, at *10 (E.D. Pa. Mar. 5, 1998); *Butterfield v. Giuntoli*, 670 A.2d 646, 652 (Pa. Super. 1995). Rather, a provision of the policy "is ambiguous 'if it is reasonably susceptible of different constructions and capable of being understood in more than one sense.'" *Id.* (citing *Hutchinson v. Sunbeam Coal Co.*, 519 A.2d 385, 390 (1986)). However, a court should not distort the meaning of the language or resort to "a strained contrivance" in order to craft an ambiguity. *Id.* (citing *Steuart v. McChesnye*, 444 A.2d 659, 663 (1982)). Where the language of the policy is clear and unambiguous, a court must give effect to that language. *Madison*, 735 A.2d at 106.

Words of common usage in an insurance policy, such as "tangible property" and "intangible property" are to be construed in their natural, plain, and ordinary sense. *Id.* at 108 (citations omitted). A court may inform its understanding of policy terms by considering their dictionary definitions. *Id.* Black's Law Dictionary defines "tangible property" as "[p]roperty that has physical form and substance," and "intangible property" as having "no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, copyright, and franchises." Black's Law Dictionary 809, 1456 (6th Ed. 1990). Merriam-Webster's Dictionary of Law defines "tangible property" as "property that has a tangible and corporeal existence and intrinsic economic value because of it," and "intangible property" as "property (as a stock certificate or professional license) that derives value not from its intrinsic physical nature but from what it represents." Merriam-Webster's Dictionary of Law, http://dictionary.reference.com/browse/%22intangible%20property%22 (last

visited May 1, 2008); *see also Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 819 (3d Cir. 1994) (finding that "intangible property is defined as property that does not have intrinsic value but which is merely representative of value, like stock certificates"); *In re McFarlane's Estate*, 459 A.2d 1289, 1291 (Pa. Super. 1983) ("Intangible property is property that has no intrinsic or marketable value, but is merely the representative or evidence of value, such as certificates of stocks, bonds, promissory notes, and franchises.").

The court finds that "tangible property" under the Policy is not ambiguous so as to include checks. A check is not "tangible property" because it does not have intrinsic value. Similar to stock certificates, promissory notes, and credit cards, checks merely represent value. *See Pa. State Employees Credit Union v. Fifth Third Bank*, Civ. No. 1:CV-04-1554, 2005 WL 1154594, at *34-35 (M.D. Pa. May 3, 2005) (finding that when money is wrongfully removed from a debit-card account "the defrauded individual has no ownership rights in certain cash at the bank, just the right against the bank to payment in a certain amount"); *Grochowski v. Larson*, 538 N.W. 2d 802, 803 (Wis. Ct. App. 1995) (finding that checks fall within the definition of intangible property rather than tangible property because "[t]hey have no value by themselves, but rather *represent* value"); *see also Kane v. Ins. Co. of N. Am.*, 392 A.2d 325, 326 (Pa. Commw. Ct. 1978) (discussing uncashed checks as a class of intangible property under Pennsylvania escheat laws); *Pagliarulo v. Nat'l Shawmut Bank of Boston*, 233 N.E.2d 213, 214 (Mass. 1968) (holding that a cashier's check was not "tangible, personal property" within the clause of testator's will giving tangible, personal property to testator's daughter).

Plaintiff argues that *Kane v. Insurance Company of North America*, 392 A.2d at 326, is distinguishable because, in addition to being a escheat case, the checks involved there were

uncashed and, therefore, no liability was created.  (Pl.'s Resp. Br. to Def.'s Reply Br. at 2.)  This argument does not support Plaintiff's position.  Regardless of whether a check is cashed or uncashed, it has no intrinsic value and remains intangible property.  *See Temco Metal Prod. Co. v. St. Paul & Marine Ins. Co.*, 543 P.2d 1, 2 (Or. 1975) ("[W]e do not believe that paying money out on forged checks constitutes injury to or destruction of [tangible property] as contemplated by the parties to the policy in question.")

Plaintiff also argues that checks are distinguishable from promissory notes and stock certificates.  (Pl.'s Mem. in Supp. of Pl.'s Ans. to Def.'s Mot. for Summ. J. 6.)  Plaintiff cites to 18 Pa. Cons. Stat. § 4105 for attempted support, arguing that, under the Pennsylvania Crimes Code, an individual can be prosecuted for issuing a check that is not honored by a bank, but an individual who issues a promissory note that is not paid in a timely fashion is not liable to criminal penalty.  (*Id.*)   However, that Pennsylvania established a distinct crime for the conduct of the issuance of bad checks does not transform checks into tangible property or classify them differently than promissory notes for civil law purposes.  "Property" under the Pennsylvania Crimes Code, 18 Pa. C. S. A. § 3901, is defined, in part, as "[a]nything of value, including real estate, *tangible and intangible property*."  *See Commonwealth v. Favinger*, 516 A.2d 1386, 1388-1389 (Pa. Super. 1986) (emphasis added) (finding that checks had value and constituted property under the Crimes Code because the amount to be received was filled in and they were signed by the maker).

Because the court does not find the term "tangible property" to be ambiguous, it cannot apply the reasonable expectation doctrine and does not reach the inquiry of whether a reasonable person in the position of Plaintiff would have understood "tangible property" to include checks.

*See Madison*, 735 A.2d at 106 ("Where . . . the language of the contract is clear and unambiguous, a court is required to give effect to that language."); *Lucker,* 23 F.3d at 814 (applying the reasonable expectation doctrine only after the court found the provision to be ambiguous).

## V.  CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment.

An appropriate Order follows.